IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANGEL GONZALEZ** | : CIVIL ACTION |
| | : |
| v. | : NO. 20-4193 |
| | : |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | : |
| | : |

**MEMORANDUM**

**SCHMEHL, J.**   /s/ JLS                                                                              OCTOBER 21, 2021

      This breach of contract action was originally brought by Plaintiff Angel Gonzalez ("Gonzalez") in the Court of Common Pleas of Philadelphia County, then removed by Defendant State Farm Mutual Automobile Insurance Company ("State Farm") to this Court. In his Complaint, Gonzalez alleges that State Farm breached the auto insurance policy it maintained with Gonzalez when it denied his claims for medical expense benefits and UIM benefits following a motor vehicle collision that occurred on August 23, 2019 (Count One). Gonzalez has also added a count for bad faith (Count Two). Presently before the Court is State Farm's motion for summary judgment. For the reasons that follow, the motion is granted.

      **STANDARD OF REVIEW**

      Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

1

*Lobby, Inc.*, 477 U.S. at 242 (1986); see *Scott v. Harris*, 550 U.S. 372, 380 (2007). The mere existence of some disputed facts will not overcome a motion for summary judgment. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson*, 477 U.S. at 247-48). In undertaking this analysis, the Court must view all facts in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 380.

While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### **FACTS**

The Court finds that the following facts are not in dispute:

1. On or about December 22, 2018, Gonzalez applied for and was issued an automobile policy of insurance by State Farm. ECF 25-3, Complaint at ¶10.
2. The policy provided for Medical Payments Coverage in the amount of $5,000.00 per person, and Underinsured Motorist Coverage in the amount of $100,000 per person and $300,000 per accident, among other things. *Id*. at ¶12.
3. The initial term of the policy was December 22, 2018 to June 22, 2019. *Id*. at ¶13.
4. On July 17, 2019, Gonzalez added a third vehicle to his State Farm policy and was issued a new Declarations Page reflecting the addition of a 1984 Chevrolet El Camino. *Id.* at ¶ 29. At this time, Gonzalez's policy period was

changed to July 17, 2019 through December 22, 2019 and the policy number was changed to 351 9474-F22-38A. *Id*. at ¶ 30.

5. On March 27, 2019, Gonzalez signed a Request for State Farm Payment Plan's Recurring Monthly Payment Option ("SFPP").

6. One of the provisions in the SFPP agreed to by Gonzalez states: "I hereby authorize State Farm affiliates and subsidiaries (State Farm) and the financial institute designated (or any other financial institution I may authorize at any time) to deduct/charge monthly regular recurring payments required for the payment of insurance or loan repayments from my chosen method below from either my financial account or credit/debit card." ECF 25-5, SFPP agreement; ECF 25-4, Gonzalez Dep. at p.27-28.

7. The SFPP also states: "If any transaction is not honored by my financial institution, the policies or loans will be considered not paid. State Farm will ask me to pay the dishonored transaction with a replacement payment and will suspend the recurring monthly payment option." ECF 25-5.

8. The SFPP further stated: "Note-the date of the actual deduction/charge may vary based on the processing times of the financial institutions." *Id.*

9. At the time Gonzalez entered into the SFPP, he also provided his debit card account number ending in 6395 that was linked to his checking account with Fulton Bank (the "Bank"). ECF 25-4, Gonzalez Dep. at p. 30. Gonzalez understood that by his doing so, State Farm would be using the number to debit money out of his checking account on the 22nd of each month. *Id*.

10. State Farm made withdrawals from Gonzalez's checking account with the Bank in accordance with the SFPP on April 24, 2019, May 24, 2019 and June 26, 2019. *Id*. at pp.31-32, 36-37, 38-39; ECF 26-2. These withdrawals were labeled "REC PURC STATE FARM 6395." *Id*.

11. The Bank's corporate designee, Tina Heist ("Heist) testified that the words "REC PUR" on Gonzalez's June 2019 banking statement as "REC PUR STATE FARM 6395" meant that the transactions were recurring purchases. ECF 25-8, Deposition of Tina Heist at 18; Exhibit 2.

12. State Farm's corporate designee, Kelly Thomas ("Thomas"), also testified that t these withdrawals were recurring purchases. ECF 25-7, Deposition of Kelly Thomas at 15-16.

13. Heist testified that Gonzalez's checking account was enrolled in the Bank's overdraft elect program which provided overdraft protection for recurring purchases but not for "everyday debit transactions." *Id*. at pp. 10, 17.

14. As of July 11, 2019, Gonzalez's account balance in his checking account tied to the SFPP was $2.76. ECF 25-6, Fulton Bank Account Statement from 7/12/19 – 8/11/19; ECF 25-4 at p. 40.

15. Thereafter, on July 17, 2019, a withdrawal was made to his account in the amount of $10.00 which resulted in Gonzalez having a balance of -$7.24 as of that date. An additional overdraft fee of $39.00 was assessed at that time resulting in a balance of -$46.24 as of July 17, 2019. ECF 25-6; ECF 25-4 at p.40.

16. No additional deposit was made to Gonzalez's checking account on or before July 22, 2019. As a result, as of July 22, 2019, Gonzalez's checking account had a negative balance. ECF 25-6; ECF 25-4 at p.41.

17. Thomas testified that State Farm attempted to debit Gonzalez's account for the July premium payment on the morning of July 23, 2019. ECF 25-7, Thomas Dep. at pp.17-18; ECF 25-8, Heist Dep. at p.21. The payment was declined by the Bank for insufficient funds. *Id*. at p.18.

18. State Farm's attempt to debit the account in July 2019 was confirmed by Heist. ECF 25-8 at p. 21. Heist testified that the Bank received the request for the authorization on July 23, 2019 at 8:41 a.m. She further testified that she does not know exactly when State Farm sent in the request. *Id*. at p. 22-23.

19. State Farm's request did not go though, as it was declined for insufficient funds. *Id.* at pp. 23-24. Specifically, at the time the debit from State Farm was attempted, the account had a negative balance. *Id*. at 25.

20. Heist testified that the Bank did not provide notice to Gonzalez that State Farm's request was denied for insufficient funds "[b]ecause the transaction was stopped prior to even hitting the account." *Id*. at 27. This is also the reason why the transaction did not appear on jus July 2019 bank statement. She added that if the transaction was covered by Gonzalez's overdraft protection the transaction would have posted to his account and a fee would be assessed. *Id*.

21. Gonzalez testified that it was his understanding that the monthly premium payments were supposed to come from his checking account and agreed that his July banking statement did not indicate a payment was made. *Id*. at 42.

22. Heist also confirmed that Gonzalez's checking account is linked to the debit card identified in the SFPP ending in 6395. *Id.* at p.28.

23. Heist testified that the withdrawal attempt was not covered by Gonzalez's overdraft protection because the request was submitted as an "everyday debit transaction" instead of as a recurring purchase. *Id*. at p. 25. In reaching this conclusion, Heist relied on a "report" from the Bank's "cold storage which captures the transactions that come in against the debit card and whether they were declined or approved." *Id.* Heist further testified that the Bank had no control over how the requests are submitted and that the prior month's requests from State Farm had come in a "different form." *Id.* at p. 26.

24. State Farm's SFPP Account Inquiry System – Billing and Payment Breakdowns document provides the following information:

    1. <u>Paid on</u>   <u>Source</u>   <u>Payment type</u>
    2. 4/7/19    Recurring  Credit Card
    3. 4/22/19   Recurring  Credit Card
    4. 5/22/19   Recurring  Credit Card
    5. 6/22/19   Recurring  Credit Card
    6. **7/22/19   Recurring  Credit Card**

      7.  7/23/19  Returned Payment – declined authorization

ECF 25-7, Thomas Dep., Ex. 2. (emphasis added.)

25. In 2019, Gonzalez was sent monthly paper account statements from the Bank detailing the account's transactions, among other things. ECF 25-8 at pp. 28-29. The Bank mailed Gonzalez's August statement to his address on August 12, 2019. *Id*.

26. Gonzalez testified that he did not monitor his checking account around July/August 2019 to see what money was coming out of the account. ECF 25-4 at p.45.

27. Later in the day on July 23, 2019, Gonzalez deposited a check into his checking account with the Bank in the amount of $800.00. *Id.* at 40-41.

28. On July 23, 2019, State Farm prepared a "Notice of Cancellation or Refusal to Renew." ECF 25-9.

29. Thomas testified that State Farm does not have a policy, procedure or practice of notifying their insured that a payment was declined by the insured's bank prior to issuing a notice of cancellation of the policy. ECF 25-7, Thomas Dep. at 27-28.

30. A State Farm Printing, Inserting and Mailing State Farm supervisor, Lathonia D. Maloy ("Maloy"), averred that a Non-Pay Cancellation Notice was mailed on July 24, 2019 to Gonzalez's address at 739 S. Plum Street, Lancaster. ECF 25-10, Affidavit of Lathonia Maloy ("Maloy"). Maloy further averred that the Notice was processed for delivery at the Harrisburg

(Pennsylvania) Postal Processing and Distribution Center in preparation for delivery to Gonzalez on July 26, 2019 at 12:35:39 p.m. *Id.*

31. Gonzalez acknowledged that the Notice of Cancellation or Refusal to Renew lists his correct address. ECF 25-4 at p. 43. In fact, Gonzalez testified that he has lived at the same address continuously for at least the past four years. ECF 25-4 at p.8.

32. The Notice sets forth an "Amount Due" of $86.87 (which included a $1.00 surcharge) and indicates a "Cancel Date" of August 12, 2019. ECF 25-9. It further states that "[i]f we receive your payment of the Amount Due on or before AUG 11, 2019, we will continue your policy without a lapse in coverage." *Id*.

33. Gonzalez admitted that he did not take any actions to pay the amount of $86.87 before August 12, 2019. ECF 25-4 at p. 44-45.

34. As a result, the State Farm policy was cancelled on August 12, 2019. ECF 25-9.

35. Gonzalez was involved in a motor vehicle accident on August 23, 2019, in which he alleged he sustained serious injuries. ECF 25-3, Complaint at ¶ 32-34. Thereafter, Gonzalez submitted a claim for benefits to State Farm for injuries/losses sustained in the accident. *Id*. at ¶ 34.

36. By letter dated September 24, 2019, State Farm advised Gonzalez that his claim was denied because State Farm cancelled his policy on August 12, 2019 due to non-payment of premium. ECF 21-11.

**DISCUSSION**

State Farm contends it is entitled to summary judgment on Count One because Gonzalez's automobile policy had been canceled for failure to pay the premium on July 23, 2019 and that the cancelation was justified because on that date Gonzalez's account contained insufficient funds. The Court agrees.

Shortly after he was issued his automobile policy by State Farm, Gonzalez entered into the SFPP pursuant to which he authorized State Farm "to deduct/charge monthly recurring payments required for the payment of insurance … from either my financial account or credit/debit card." ECF 25-5, SFPP agreement; ECF 25-4 at p. 27-28. Gonzalez also provided his debit card account number linked to his checking account with the Bank. *Id*. at p.30. Gonzalez testified that he understood that by his doing so State Farm would be using the number to debit money out of his checking account on the 22nd of each month. *Id*. The SFPP cautioned that "If any transaction is not honored by my financial institution, the policies or loans will be considered not paid" and that "the date of the actual deduction/charge may vary based on the processing times of the financial institutions." ECF 25-5. Gonzalez acknowledged that pursuant to the SFPP, direct debits were made by State Farm from Gonzalez's checking account with the Bank for the months of April, May, and June 2019. Exhibit 25-4 at p.31-32, 36-37, 38-39.

Unfortunately, when it was time for the July payment to be deducted from Gonzalez's checking account on July 22, 2019, the account reflected a negative balance. ECF 25-6; ECF 25-4 at p.41. As a result, the payment was declined by the Bank on July 23, 2019 for insufficient funds. ECF 25-8 at 23-24. Gonzalez

acknowledged that the July payment was never debited from his account and received by State Farm. ECF 25-4 at p. 42. Despite acknowledging the fact that the Bank mailed monthly paper statements to him, ECF 25-8, Gonzalez further admitted that he did not monitor his checking account during July/August 2019 to see what monies were coming out of his account. ECF 25-4 at 45.

Although a check in the amount of $800.00 was later deposited into Gonzalez's account on July 23, 2019, by that time State Farm's request for authorization has already been denied by the Bank for insufficient funds.

Relying on the testimony of Heist, ECF 25-8 at pp. 25-26, Gonzalez contends that there is a genuine issue of material fact as to whether State Farm request for the July premium from Gonzalez's checking account was submitted as a recurring request (as claimed by State Farm) or as an "everyday debit transaction" (as testified to by Heist) and thereby breaching the SFPP. According to Heist, a recurring request would trigger Gonzalez's overdraft protection whereas an everyday debit transaction would not.

Heist's testimony is flatly refuted by State Farm's SFPP Account Inquiry System – Billing and Payment Breakdowns document which clearly shows that **all** of the State Farm's monthly requests to the Bank were marked as "recurring," including the one made on July 22, 2019.  ECF 25-7, Ex. 2; see also ECF 25-7, Thomas Dep. at 15-17. Heist cited no documentary evidence to support her testimony that the request was submitted by State Farm as an "everyday debit transaction," instead relying solely on some vague "report" from the Bank's "cold storage."[1] In short, the recurring request

---

[1] Apparently, this "report" was not provided in response to State Farm's counsel's subpoena. ECF 25-8, Heist Dep. at 22.

State Farm made on July 22, 2019 was the exact same recurring request it had made on the previous months, only this time Gonzalez did not have sufficient funds in his account. In addition, any issue over whether Gonzalez's overdraft protection should have been in fact been triggered when the recurring request from State Farm was presented is more properly directed to the Bank, not State Farm.

State Farm gave Gonzalez another opportunity to maintain his insurance policy when it mailed to him on July 24, 2019 the Notice of Cancellation. ECF 25-9. This Notice advised Gonzalez that if State Farm received his July payment of $85.87 by August 11, 2019, his policy would continue with no lapse in coverage. Despite admitting that the address on the Notice was his current address, Gonzalez testified that he did not receive the Notice. ECF 25-4 at 43.

In response, State Farm invokes the mailbox rule. The United Stated Court for the Western District of Pennsylvania recently explained the mailbox rule as follows:

> Under the mailbox rule, '[p]roof of mailing creates a rebuttable presumption of receipt of the mailed item.' *Jones v. Prudential Prop. and Cas. Ins. Co.*, 856 A.2d 838, 845 (Pa. Super. Ct. 2004). '[T]he party who is seeking the benefit of the presumption must adduce evidentiary proof that the letter was signed in the usual course of business and placed in the regular place of mailing.' *Geise v. Nationwide Life & Annuity Co. of Am.*, 939 A.2d 409, 423 (Pa. Super. Ct. 2007) (quoting *Commonwealth v. Thomas*, 814 A.2d 754, 758 (Pa. Super. Ct. 2002)). This evidence may be direct evidence that the letter was mailed, or evidence of business custom. *Sheehan v. W.C.A.B. (Supermkts. Gen.)*, 600 A.2d 624, 630 (Pa. Commw. Ct. 1991). Once a party brings forward evidence showing that it mailed the letter at issue, a rebuttable presumption arises. *Breza v. Don Farr Moving & Storage Co.*, 828 A.2d 1131, 1135 (Pa. Super. Ct. 2003). Testimony from the addressee that the letter was not received is not, standing alone, sufficient to rebut the mailbox rule's presumption. *Id*.

*Focht v. Nationstar Mortg., LLC*, No. 3:18-CV-151, 2020 WL 6866517, at *3 (W.D. Pa. Nov. 16, 2020).

Here, State Farm is entitled to the presumption of receipt of the Notice because it has demonstrated through the unrefuted affidavit of Maloy that the Notice was placed in the regular place of mailing. Specifically, Maloy averred that a Non-Pay Cancellation Notice was mailed on July 24, 2019 to Gonzalez's address at 739 S. Plum Street, Lancaster and that the Notice was processed for delivery at the Harrisburg (Pennsylvania) Postal Processing and Distribution Center in preparation for delivery to Gonzalez on July 26, 2019 at 12:35:39 p.m. ECF 25-10. The only information Gonzalez has presented to rebut the presumption of receipt is his own testimony that he never received the Notice.[2] Under the above-cited authority, however, mere testimony by Gonzalez that the Notice was not received does not rebut the mailbox rule's presumption of receipt.[3]

For all the foregoing reasons, State Farm is entitled to summary judgment on the breach of contract claim. Since it is entitled to summary judgment on the breach of contract claim (Count One), it follows that State Farm is entitled to summary judgment on the bad faith claim. (Count Two).

---

[2] Interestingly, Gonzalez does not claim that he did not receive the subsequent notice from State Farm dated September 24, 2019 that denied his claims for benefits.

[3] Gonzalez argues that in any event State Farm should have a practice of separately notifying their insured that a payment was declined by the insured's bank prior to issuing a notice of cancellation of the policy. However, Gonzalez does not cite any authority for this proposition. The Notice of Cancellation by itself gave Gonzalez at least 15 days (until August 11, 2019) to bring his account current. ECF 25-9.

13